**DONALD AMAMGBO**
**7901 OAKPORT, SUITE 4900**
**OAKLAND, CA 94621**
**TELEPHONE: 510 615 6000**
**FACSIMILE: 510 615 6025**

**REGINALD TERRELL**
**THE TERRELL LAW GROUP**
**223 25TH STREET**
**RICHMOND 94804**
**TELEPHONE: 510 237 9700**
**FACSIMILE: 510 237 4616**

**Attorneys for Plaintiff**

E-filing

ADR

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DENNIS PATRICK, on behalf of himself and all others similarly situated,

Plaintiff,

vs.

REDDY ICE HOLDINGS, INC.; ARCTIC GLACIER INC; ARCTIC GLACIER INTERNATIONAL INC.; AND HOME CITY ICE COMPANY,

Defendants

No. C08-02369 JL

CIVIL - CLASS ACTION

JURY TRIAL DEMANDED

GO 44 SEC. N
NOTICE OF ASSIGNMENT
TO MAGISTRATE JUDGE SENT

## CLASS ACTION COMPLAINT

Plaintiff, KAREN DAVIS ("Plaintiff") on behalf of himself and all others similarly situated, bring this action under the federal antitrust laws §§ 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 26, to recover treble damages, injunctive relief, and the costs of suit, including reasonable attorneys' fees and experts' fees, for the injuries to the Plaintiff and proposed class members she represents resulting from Defendants' violation of the federal antitrust laws, specifically Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2. The allegations set forth

below are based upon information and belief pursuant to the investigation of counsel, except as to those allegations regarding the Plaintiff.

**NATURE OF CLAIM**

1. This class action, brought under the federal antitrust laws, arises out of a conspiracy among Defendants - United States and Canadian ice producers - to fix prices, to allocate markets, customers and territories and to commit other anticompetitive acts for the purpose and effect of unlawfully fixing, raising, maintaining, and/or stabilizing prices of ice sold in plastic bags or in large blocks ("packaged ice:") in the United States.

2. American consumers typically encounter packaged ice as the bagged ice sold in a freezer in the nearest convenience store. That freezer usually bears the trade marks of the ice manufacturer. Generally, a store owner is a direct purchaser from the packaged ice manufacturer. The packaged ice manufacturer delivers packaged ice in trucks and fills the branded freezer.

3. There are only three major producers of packaged ice in the United States and Canada - Reddy Ice Holdings, Inc. ("Reddy Ice"), Arctic Glacier Inc. ("Arctic Glacier"), and The Home City Ice Company ("Home City") (all defined formally below).

4. The number one U.S. packaged ice product is Reddy Ice. On March 5, 2008, the United States Department of Justice executed a search warrant at the Dallas, Texas headquarters of Reddy Ice. On March 6, 2008, Arctic Ice announced that it had "bec[o]me aware [that] the Antitrust Division of the United States Department of Justice is conducting an investigation into possible antitrust issues in the packaged ice industry." Arctic Glacier promised that it would "cooperate with authorities" in the investigation.

5. To obtain a search warrant, the United States had to have probable cause, accepted by a magistrate, to believe that it would obtain evidence of an antitrust violation as a result of executing the search warrant - that is, the United States had to have evidence sufficient to warrant a person of reasonable caution to believe that raiding the offices of a seemingly lawful business would uncover evidence of antitrust violations and that claimed evidence had to have been examined and accepted by a magistrate. That belief, which was recounted in sworn affidavit or by testimony, must be grounded on reasonably trustworthy information.

6. Moreover, a report published by Reuters on March 14, 2008 revealed that management and employees of Reddy Ice Holdings "have received grand jury subpoenas seeking information related to a[n] anti-trust probe." The grand jury is located in the Eastern District of Michigan.

7. The distribution networks of the three major packaged ice producers show all the markings of territorial allocations. The major producers hold large swaths of contiguous territory in the United States. They have little, if any, overlap in the locations they serve despite having the ability and resources to compete with each other.

8. Indeed, over the past decade, Defendants have honed a strategy of avoiding each other's territories, while otherwise growing their businesses through acquisition, even when it has been against their unilateral economic self-interest to do so.

9. Further, the structural characteristics of the packaged ice market make it uniquely susceptible to anticompetitive acts. Packaged ice is a highly perishable and expensive to transport and store. The demand (in a hypothetical competitive market) for packaged ice is highly inelastic. Packaged Ice is a commodity product. For the direct customer (e.g., a retailer), price is the most significant factor in the purchase decision.

10. In simple terms, the market for packaged ice shares numerous characteristics with markets, such as concrete production, where price fixing is often endemic.

11. The price of packaged ice has risen steadily and consistently over the class period, notwithstanding the gyrations that should be expected due to varying input costs.

## JURISDICTION AND VENUE

12. The Court has jurisdiction over this action pursuant to 15 U.S.C. §§15 and 26, and pursuant to 28 U.S.C. §§1331, 1337(a).

13. Venue is proper in the Eastern District of Michigan pursuant to Section 22 of the Sherman Act, and 28 U.S.C. § 1391(b) and (c). Some or all Defendants reside, are licensed to do business, are doing business, had agents, or are found to transact business, in this District and/or the claims arose in this District.

14. The activities of Defendants and their co-conspirators were within the flow of,

were intended to, and did have, a substantial effect on the foreign and interstate commerce of the United States.

**PARTIES**

15. Plaintiff Dennis Patrick is a Napa County, California resident who purchased packaged ice directly from one or more of the Defendants during the class period, and was damaged as a result of Defendants' unlawful conduct.

18. Defendant Reddy Ice Holdings, Inc. ("Reddy Ice") is a Delaware corporation with its principal place of business located at 8750 North Central Expressway, Suite 1800, Dallas, TX 75321.

19. Defendant Arctic Glacier Inc. is a business entity organized under the law of Alberta, Canada, with its principal place of business located at 625 Henry Avenue,, Winnipeg Manitoba, Canada.

20. Defendant Arctic Glacier International Inc. (together with Arctic Glacier Inc., "Arctic Glacier") is a wholly-owned subsidiary of Arctic Glacier Inc. and serves as its operating and holding subsidiary in the United States. Arctic Glacier International is a Delaware Corporation with its principal place of business located at 1654 Mathaler Lane, West St. Paul, Minnesota 55118.

21. Defendant The Home City Ice Company ("Home City") is a privately-held Ohio corporation located at 6045 Bridgetown Road, Cincinnati, Ohio 45248.

**CO-CONSPIRATORS**

22. Upon information and belief, various other persons, firms and corporations, not named as Defendants herein, have participated as co-conspirators with the Defendants in the violation of law alleged in this Complaint and have engaged in conduct and made statements in furtherance of the conspiracy.

23. The acts charged in this Complaint have been done by Defendants and their co-conspirators, or were authorized, ordered or done by their respective officers, agents, employees or representatives while actively engaged in the management of each Defendant's business or affairs.

**INTERSTATE TRADE AND COMMERCE**

24. The Defendants are leading manufactures of packaged ice in the United States and Canada.

25. Packaged Ice is sold throughout the United States in interstate commerce.

26. The restraints hereinafter alleged have directly and substantially affected interstate commerce in that the Defendants have deprived Plaintiff and the Class of the benefits of free and open competition it the packaged ice market throughout the United States and Canada.

**THE MARKET FOR PACKAGED ICE**

27. Packaged Ice is sold in cubes or blocks (or other similar shapes) in packages ranging from 5 lbs. to 50 lbs. It is commonly sold in supermarkets, convenience stores, beer and liquor stores, drug stores and other commonplace retail outlets.

28. Packaged Ice has numerous uses, for the most obvious of which is to maintain foods and beverages at suitable cool temperatures for human consumption, especially in conjunction with outdoor events and social gatherings.

29. The market demand for packaged ice, under competitive conditions, is inelastic. That is, an increase in price would produce a less than offsetting reduction in quantity sold. Thus, an artificial increase in price would be remunerative.

30. Packaged Ice is a commodity. Consumers have little, if any, preference as to brands.

31. The ultimate consumer demand for packaged ice is driven by many factors unrelated to price.

32. For the direct purchasing retailer, however, under normal conditions and in the presence of bona fide competition, the cost of Packaged Ice is the most important factor in its purchasing decision.

33. For ultimate consumers, the cost of packaged ice is seldom significant relative to the overall costs of the occasions for which it is used.

34. Given its extremely perishable character in warmer conditions, as well as the similar character of the commodities it is used to cool, ultimate consumers will seldom be able to

engage in price-comparison shopping for packaged ice.

35. There are no economically reasonable substitutes for packaged ice.

36. The ultimate consumer demand for packaged ice is highly seasonal, rising significantly in the warmer months. Peak demand during the warmer months of May through September accounts for 69 percent of annual revenues.

37. The ultimate consumer demand for packaged ice is geographically specific, with packaged ice being more favored in those parts of the country where the warmer season begins earlier and endures longer.

38. Packaged Ice producers can and do entrench themselves with their retail customers by installing on-location freezers, which freezers bear the producers' trademarks and are owned by the producers. This raises the costs to purchasers of switching from one packaged ice supplier to another.

39. Typical customers (i.e., retailers) carry only one brand of ice and have long terms relationships with the manufacturer from whom they purchased packaged ice products.

40. There are substantial barriers that preclude or reduce entry into the production and distribution of packaged ice. The industry has a high start-up and replacement costs.

41. Packaged Ice is costly to transport and costly to store. As a result, packaged ice effectively cannot be delivered more than 100 miles away from the plant where it is produced.

42. Before the past ten or fifteen years, packaged ice was produced and distributed by local and regional firms. The last decade and a half have brought widespread consolidation as Defendants have acquired numerous independent

43. Reddy Ice is the largest manufacturer and distributor of packaged ice in the United States. It sells its products primarily under the Reddy Ice brand to some 82,000 locations in some 31 states and the District of Columbia. It has over 2,000 employees and distributes its products to the marketplace through direct store delivery, warehouse programs, distributors, jobbers, and its proprietary on-site making technology.

44. Reddy Ice had sales of $339 million in 2007. It holds the dominant market position in the United States.

45. Reddy Ice manufactures and distributes ice products, including cubed ice, crushed ice, half-moon and cylindrical ice, and block ice. It sells approximately 1.9 million tons of ice per year, primarily packaged in seven and ten pound bags, sold principally to convenience stores and supermarkets.

46. Over the past several years, Reddy Ice has conducted a series of acquisitions designed to eliminate competition in the production and distribution of packaged ice.

47. Reddy Ice's acquisition program has focused on acquiring small local and regional ice producers that operate either within a contiguous to its existing sales areas for the purpose of eliminating competition. Reddy Ice has not acquired ice producers in areas that would bring it into competition with either Arctic Glacier or Home City.

48. From 1997 through 1999, Reddy Ice (and its predecessor) pursued a "consolidation strategy" acquiring some 80 ice businesses, most significantly acquiring in 1998 the "Reddy Ice Corporation" and Cassco Ice & Cold Storage. Previously, Suiza's Reddy Ice had made some 28 acquisition in the January 1997 through April 1998 period. In 2003, Reddy Ice acquired Triangle Ice Co. for $64 million. Then, in 2004, it acquired 11 more ice companies. In 2005, it acquired another two, and in 2006, another 10. None of Reddy Ice's acquisitions were in regions that would place it into competition with Arctic Glacier or Home City.

49. Arctic Glacier is another leading producer, marketer and distributor of packaged ice in the United States, selling *(inter alia)* under the brand name Arctic Glacier ® Premium ice. Arctic Glacier operated 37 manufacturing plants and 50 distribution facilities across Canada and the northeast, central and western United States, serving more than 70,000 retail accounts.

50. Arctic Glacier is the second-largest producer and distributor of packaged ice in the United States, with total revenues of $249 million for 2007. Of these revenues, more than 80 percent comes from its United States operations, in which it has dominant market positions in major eastern seaboard cities such as New York and Philadelphia, as well as in New England, California and the Midwest.

51. During the last several years, Arctic Glacier has engaged in an acquisition campaign designed to eliminate competition in the market for packaged ice. Indeed, Arctic

Glacier has stated that the acquisition of contiguous, competing ice businesses is its business strategy.

52. Since 1997, Arctic Glacier has completed some 62 acquisitions, at a cost of some $505 million.

53. In 2006, Arctic Glacier acquired a group of six entities in California for $188.5 million, giving its market dominance in California, where neither Reddy Ice nor Home City operates. In March 2007, Arctic Glacier enhanced its dominance in California by acquiring Union Ice-Pacific L.P. of Los Angeles, California, again acquiring operations contiguous to, or overlapping with, its existing operations.

54. Also, during 2006, Arctic Glacier acquired an upstate New York producer, Happy Ice LLC, giving Arctic Glacier dominance in a region where there is no competition from either Reddy Ice or Home City.

55. Home City sells ice across all of Ohio, Indiana, Illinois, Kentucky, and West Virginia, as well as parts of Michigan, Pennsylvania, Tennessee, New York, and Maryland. Home City manufactures 4,400 ton of ice per day in 28 state-of-the-art manufacturing plants, with 36 distribution centers, and has a fleet of over 500 trucks to serve the Midwest.

56. Together, Defendants are the largest of packaged ice in the United States and North America. Sales by Defendants comprise approximately 70% of the packaged ice sold to retailers and similar businesses.

## ANTICOMPETITIVE CONDUCT

57. Defendants hold a dominant position in the sale of packaged ice in the United States. They have abused that dominance through collusive activity to raise, fix and maintain the price of packaged ice at supra-competitive levels. In short, among other things, they have agreed to allocate territories and customers among themselves and to avoid competition with each other.

58. Beginning at least as early as January 1, 2002, the exact date being unknown to Plaintiff, and continuing thereafter to the present day, Defendants and their co-conspirators engaged in unlawful conduct, combination or conspiracy with the purpose and effect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully

fix, raise, maintain, and/or stabilize prices of packaged ice in a per se violation or unreasonable restraint of trade in violation of Section 1 of the Sherman Act.

59. During the class period, Defendants engaged in illegal, anticompetitive conduct by, *inter alia*, allocating markets so that Defendants did not compete with each other.

60. This resulted in the following market division: (1) Reddy Ice has the dominant market position in the U.S. sunbelt states, from Florida to Arizona, the mid-Atlantic and the Northwest; (2) Arctic has a dominant market position in the Central and Northeastern states and California; and (3) Home City has dominant market position in the Illinois, Indiana and Ohio as well as on the fringes of some adjoining states.

61. There is little, if any, overlap in the geographic markets where each Defendant operates.

62. Defendants have engaged in conduct inconsistent with their economic self-interest to perpetuate their territorial allocation. By way of illustration, at all times, it would have been in Arctic Glacier's economic self-interest to have entered the packaged ice market on the southern tier of the United States, as the demand for packaged ice is strongest in those area. Arctic Glacier could have entered that market with little fear of retaliation from the dominant incumbent, Reddy Ice, because (excepting Arctic Glacier's 2006 acquisitions in California) Reddy Ice would have little incentive to enter in the relatively unattractive markets where Arctic Glacier is dominant.

63. On information and belief, Reddy Ice agreed to Arctic Glacier's California acquisitions on condition that Arctic Glacier would not enter Reddy Ice's lucrative markets along the southern tier of the United States. California is contiguous to Reddy Ice's existing territories, and would have been a logical extension of its geographic area had it chosen to enter California.

64. Defendants agreed not to compete head to head in any of the markets in which one of them was dominant. Each region of the United States, as previously alleged, is controlled by one particular packaged ice manufacturer.

65. On or about March 6, 2008, Reddy Ice issued the following press release:

> Reddy Ice Holdings, Inc. (NYSE:FRZ) announced that federal officials executed a search warrant at the Company's corporate office in Dallas on March 5, 2008. The Company is cooperating with the authorities.

> The Company's priority mission is to provide superior service to its customers, and it will continue to function in a normal business matter.

66. On or about March 7, 2008, Reddy Ice issued the following additional press release:

> Reddy Ice Holdings, Inc. (NYSE:FRZ) is providing further information to supplement the press release issued on March 6, 2008 regarding the execution of a search warrant at the Company's corporate office in Dallas on March 5, 2008. The execution of the search warrant was directed by the Antitrust Division of the United States Department of Justice with an investigation of the packaged ice industry. The Company's board of directors has formed a special committee of independent directors to conduct an internal investigation.

The Company will continue to serve its customer in its normal business manner.

67. By engaging in conduct that allocated the market among the Defendants, price competition was reduced or eliminated throughout the United States.

///

///

///

///

68. On or about March 6, 2008, Arctic Glacier issued the following press release:

> Arctic Glacier Income Fund (TSX: AG.UN) today announced that on March 5, 2008, its operating subsidiary, Arctic Glacier Inc., became aware the Antitrust Division of the United States Department of Justice is conducting an investigation into possible antitrust issues in the packaged ice industry. The company will cooperate with authorities in the course of the investigation.

## ALLEGATIONS OF ANTITRUST INJURY TO PLAINTIFFS AND THE CLASS

69. The aforesaid combination and conspiracy has had the following effects, among others:

a. it restrained and eliminated price competition with respect to packaged ice;

b. it raised, fixed, maintained and stabilized the price of packaged ice at supra-competitive levels; and

c. it deprived direct purchasers of packaged ice of free and open competition in the packaged ice market.

70. During the period covered, Defendants charged Plaintiff and the Class anticompetitive prices for packaged ice. By reason of the alleged violations of the antitrust laws, Plaintiff and the Class have sustained injury to their businesses or property, having paid higher prices for packaged ice than they would have paid in the absence of the illegal contract, combination of conspiracy, and, as a result, have been injured in their business and have suffered damages in an amount presently underdetermined. This is an antitrust injury of the type that the antitrust laws were meant to punish and prevent.

**CLASS ACTION ALLEGATION**

71. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff bring this action on their own behalf and on behalf of all others similarly situation. The "Class" is defined as:

> All persons, corporation, and other legal entities in the United States (excluding governmental entities, defendants, their subsidiaries, and any co-conspirators), who purchased packaged ice from one or more of the Defendants (the "Class") in the United States or Canada at any time from at least January 1, 2002 through the present (the "class period").

72. The members of the class are so numerous and geographically dispersed across the country that joinder of all members of the Class would be impracticable. Member of the Class are located through the United States and Canada. The exact number of Class members is unknown by Plaintiff at this time, and Plaintiff believe that the Class is in the tens of thousands. The identities of the members of the Class can only be discovered through inspection of Defendants' records, which are or should be readily available.

73. Plaintiffs' claims are typical of the members of the Class. Plaintiff and all members of the Class were commonly impacted and damaged by Defendants' wrongful conduct. Plaintiff and the Class purchased packaged ice at artificially inflated, non-competitive prices induced by Defendants' wrongful conduct alleged herein.

74. Plaintiff will fairly and adequately protect the interests of the Class. The interests

of Plaintiffs are coincident with, and not antagonistic to, those of the Class. In addition, Plaintiffs' counsel is experienced and competent in the prosecution of complex class action antitrust litigation.

75. Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members. Defendants have acted on grounds generally applicable to the entire Class. Among questions of law and fact common to the Class are:

    a. Whether Defendants conspired with the purpose and affect of fixing prices, allocating markets and committing other anticompetitive practices designed to unlawfully fix, raise, maintain, and/or stabilize prices of packaged ice;

    b. Whether Defendants' conduct violated Section 1 of the Sherman Act:

    c. The existence, duration, and illegality of the contract, combination or conspiracy alleged herein;

    d. The effect upon and the extent of injuries sustained by Plaintiff and members of the Class and the appropriate type and/or measure or damages;

    e. Whether Defendants took affirmative steps to conceal the contract, combination or conspiracy alleged herein; and

    f. Whether Plaintiff and the Class are entitled to declaratory and/or injunctive relief.

76. Class action treatment is superior to any alternatives for the fair and efficient adjudication of this controversy. Class treatment will permit the tens of thousands of similarly situated persons to prosecute common claims simultaneously and efficiently in a single forum; without the unnecessary duplication and effort and expense that individual actions would require. Class treatment will also permit the adjudication of class members' relatively small claims, which would otherwise go unaddressed as those plaintiffs cannot afford to litigate individually antitrust claims against such large corporate defendants.

77. Plaintiffs are not aware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**FRAUDULENT CONCEALMENT**

78. The running of any statute of limitations has been suspended with respect to any

claims which Plaintiffs and the other members of the Class have sustained as a result of the unlawful combination and conspiracy alleged herein and with respect to their rights to injunctive relief by virtue of the federal doctrine of fraudulent concealment. Defendants through various devices and techniques of secrecy affirmatively and fraudulently concealed the existence of the unlawful combination and conspiracy alleged herein.

**COUNT 1 - VIOLATION OF SECTION 1 OF THE SHERMAN ACT**

79. Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

80. Defendants and unnamed conspirators entered into and engaged in a contract, or conspiracy in an unreasonable restrain of violation of Section 1 of the Sherman Act.

81. As a result of the contract, combination or conspiracy among Defendants alleged herein, the prices charged to Plaintiff and the Class for packaged ice were raised, fixed, maintained, and stabilized in the United States. The alleged contract, combination, or conspiracy is a *per se* violation of the federal antitrust laws and is at a minimum an unreasonable and unlawful restraint of trade.

82. The contract, combination, or conspiracy has the following effects:

a. Priced charged to Plaintiff and the Class for packaged ice was raised, fixed, maintained or stabilized at non-competitive levels;

b. Plaintiff and the Class have been deprived of the benefits of free, open and unrestricted competition in the market for packaged ice; and

c. competition in establishing the prices paid and locations of doing business has been unlawfully restrained, suppressed and eliminated.

83. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff and the Class have been damaged by paying supra-competitive prices that they would not have had to pay but for the unlawful conduct of Defendants alleged herein.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that:

A. The Court determine that this action may be maintained as a class action under

Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure, and direct that reasonable notice of this action as provided by Rule 23(c)(2), Federal Rules of Civil Procedure, be given each and every member of the Class:

B. The unlawful combination and conspiracy alleged herein be adjudicated and decreed to have been in violation of Section 1 of the Sherman Act;

C. Judgment be entered for Plaintiff and the members of the Class against Defendants for three times the amount of damages sustained by Plaintiff and the members of the Class as allowed by law, together with the costs of this action, including reasonable attorneys' fees;

D. Defendants be enjoined from continuing the unlawful contract, combination or conspiracy alleged herein; and

E. Plaintiff and the Class be granted such other, further and different relief as the case may require or as the Court may deem just and proper under the circumstances.

**JURY DEMAND**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

Date: April 30, 2008

Respectfully submitted,

By: ____________________
DONALD AMAMGBO
REGINALD TERRELL
Attorneys for Plaintiff